HERMAN R. BALTZEN et al., Respondents, *v.* ALBERT H. NICOLAY, Appellant.

An agent who makes a contract not binding upon his principal, by reason of the fact that it was unauthorized, is liable in damages to the person dealing with him upon the faith that he possessed the authority assumed. The liability rests upon an implied warranty of authority, and the remedy is by action for its breach.

In order, however, to make the agent liable, the unauthorized contract must be one that could be enforced against the principal if authorized.

So, also, where a personal liability is sought to be enforced against an agent who contracts for an undisclosed principal, a valid contract must be established.

In an action against an auctioneer upon a contract of sale, where the defence is that the contract was by parol, and so void under the statute of frauds, the fact that the law imposes upon auctioneers the duty of making memoranda of sales made by them, and the presumptions in favor of the performance of official duty, cannot stand for proof that there was a written contract of sale. (CHURCH, Ch. J., GROVER and PECKHAM, JJ., dissenting.)

A waiver by the defendant, in such a case, of the deposit of a part of the purchase-money required to be paid down by the conditions of sale, does not estop him from showing that there was no actual payment that would take the case out of the operation of the statute.

(Submitted June 12, 1873 ; decided September 30, 1873.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

This action is brought to recover damages for an alleged breach of a contract for the sale of 500 shares of the Brooklyn City Railroad Company's stock.

The complaint alleged, in substance, that on 11th November, 1869, the defendant, as auctioneer, duly sold at public auction, to Egleston & Smith, 500 shares of the Brooklyn City Railroad Company's stock at the price of 186 per cent per share for 200 shares, and 187½ per cent per share for 300 shares ; that in making such sale, as auctioneer as aforesaid, the defendant did not disclose to the public, or to said Egleston

& Smith, or to the plaintiffs, the name of the person, if other than himself, for whom he was acting; that said Egleston & Smith, the agents of the plaintiffs, in making the purchase, relied, and were compelled to rely, upon the personal responsibility of the defendant for the delivery of the stock; that since the time of said sale the plaintiffs have been informed that at the time the defendant was acting as agent of the firm of August Belmont & Co., who were the principals, and that the defendant, in making the sale to Egleston & Smith, exceeded the positive instructions of his principals in selling the said stock at a lower figure than authorized to do, of all which facts Egleston & Smith, and plaintiffs, were ignorant at the time of the sale; that the condition of the said sale was the payment of ten per cent on the day of the purchase, and the balance on the day subsequent, at the defendant's office; that Egleston & Smith duly performed all the conditions to be kept and performed on their behalf, and on the 12th November, 1869, the day after the purchase, tendered to the defendant a certified check, payable to the order of the defendant, and then demanded the delivery of the stock; that the defendant refused to deliver the said shares of stock, etc.

The answer admitted the sale for and on account of Messrs. August Belmont & Co.; denied the payment of the ten per cent, and alleged that the contract was not in writing, and was void under the statute of frauds.

It appeared upon the trial that after the sale plaintiffs offered to pay to defendant the ten per cent deposit required, but that the latter waived the payment. Other facts appear in the opinion.

*Wm. Henry Anthon* for the appellant. The sale was void under the statute of frauds. (3 R. S., 5th ed., 221, 222; *Goelett* v. *Cowdrey*, 1 Duer, 136; *Pinkney* v. *Hagadorn*, id., 80; *Tallman* v. *Franklin*, 14 N. Y., 584; *Hicks* v. *Whitmore*, 12 Wend., 548.) Defendant acted in good faith, and plaintiffs cannot recover. (*Bush* v. *Cole*, 28 N. Y., 270; *Peters* v.

*McKeon,* 4 Den., 546; *Conger* v. *Weaver,* 20 N. Y., 140; *Bixwell* v. *Christees,* Cowp., 395.)

*Charles M. Da Costa* for the respondents. Defendant made the sale without authority and is therefore liable. (*Wolfe* v. *Luyster,* 1 Hall, 146; *Hazul* v. *Dunham,* id., 655; *Bush* v. *Cole,* 28 N. Y., 261.) Defendant will be presumed to have made the memorandum required by law. (*Hartwell* v. *Root,* 19 J. R., 345, and cases cited.) Defendant waived the requirements of the statute of frauds, and cannot now insist on them to the prejudice of plaintiffs' claim. (*Ryan* v. *Doe,* 34 N. Y., 307, and cases cited.)

ANDREWS, J. There are but two theories upon which the plaintiffs can claim to recover in this action. The one is that the defendant, acting as agent for Belmont & Co. in selling the stock, exceeded his authority by selling it below the price limited by them for the sale. The other is that the defendant did not at the time of the sale disclose his principals, and thereby became bound as principal upon the contract made. When an agent makes a contract beyond his authority, by which the principal is not bound, by reason of the fact that it was unauthorized, the agent is liable in damages to the person dealing with him upon the faith that he possessed the authority which he assumed. The ground and form of his liability in such a case has been the subject of discussion, and there are conflicting decisions upon the point; but the later and better considered opinion seems to be that his liability, when the contract is made in the name of his principal, rests upon an implied warranty of his authority to make it, and the remedy is by an action for its breach. (*Collin* v. *Wright,* 8 E. & B., 647; *White* v. *Madison,* 26 N. Y., 117; *Dung* v. *Parker,* 52 id., 494.)

The reason why the agent is liable in damages to the person with whom he contracts, when he exceeds his authority, is that the party dealing with him is deprived of any remedy

upon the contract against the principal. The contract, though in form the contract of the principal, is not his in fact, and it is but just that the loss occasioned by there being no valid contract with him should be borne by the agent who contracted for him without authority. In order to make the agent liable in such a case, however, the unauthorized contract must be one which the law would enforce against the principal if it had been authorized by him. (*Dung* v. *Parker, supra.*) Otherwise the anomaly would exist of giving a right of action against the assumed agent for an unauthorized representation of his power to make a contract, when the breach of the contract itself, if he had been authorized to make it, would have furnished no ground of action. That the agent who makes a contract for an undisclosed principal is personally bound by it, although the party dealing with him may know the general fact that he is acting as agent, is well settled; nor does the fact that the agent is an auctioneer, and that the contract arises upon a sale by him as such, withdraw it from the operation of the rule. (*Thompson* v. *Davenport*, 9 B. & C., 78; *Mills* v. *Hunt*, 20 Wend., 431.)

Applying these principles to this case, the recovery cannot be upheld. There was no payment on account of the purchase of the stock, and no delivery; and no memorandum in writing, of the sale, was shown to have been made by the auctioneer. The plaintiffs upon the case made must recover, if at all, upon the basis of the existence of a contract, valid in form, for the purchase of the stock. If they rely upon the false warranty of authority by the defendant, then, if the contract was invalid within the statute of frauds, they can recover nothing, for in a legal sense they have sustained no injury. If they say that the contract was the personal contract of the defendant, he has a right to interpose the statute as his defence. The validity of the contract, under the statute of frauds, was put in issue by the pleadings. It appeared upon the trial that there was no delivery of the stock, and that the purchase-money, although tendered, was not accepted by the defendant. The defendant, at the conclusion of the plain-

tiffs' case, moved to dismiss the complaint on the ground that no liability had been shown, and no valid contract of purchase or sale, within the statute, had been proved. The referee denied the motion and the defendant excepted. The exception was well taken.

It was part of the plaintiffs' case to show a valid contract for the sale of the stock; and, upon objection being interposed on the ground of the statute, it appearing that the contract proved was within it, they were bound to establish affirmatively the existence of an agreement valid by its provisions.

The fact that the law imposes upon auctioneers the duty to make memoranda of sales made by them did not relieve the plaintiffs from the necessity, in this action, of proving a valid contract; and the presumption which in many cases is indulged, in favor of the performance of official duty, cannot stand for proof that there was a written contract of sale as against the defendant, who denies the fact, and against whom the contract is directly or indirectly sought to be enforced.

The waiver, by the defendant, of the deposit of a part of the purchase-money, required by the conditions of sale, precluded him from alleging the omission to make it as a breach of the contract by the plaintiffs; but it did not estop him from showing that there was no actual payment on the contract, without which the statute is not satisfied, where the fact of payment is relied upon to take a contract out of it.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

RAPALLO, ALLEN and FOLGER, JJ., concur.

CHURCH, Ch. J., GROVER and PECKHAM, JJ., dissent.

Judgment reversed.